**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

DEBRA MADISON, individually and on behalf of a class of similarly situated persons,

Plaintiffs,

vs.

PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE GULF INSURANCE COMPANY,

Defendants.
_________________________________/

**CLASS ACTION COMPLAINT**

Case No. 3:25-cv-489-CWR-ASH

Jury Trial Demanded

Plaintiff, Debra Madison, individually and on behalf of a class of similarly situated persons, entities, and businesses, ("Plaintiffs"), through undersigned counsel, files this Class Action Complaint against Progressive Casualty Insurance Company, and Progressive Gulf Insurance Company, (collectively "Defendants" or "Progressive", separately "Progressive Casualty" and "Progressive Gulf").

## INTRODUCTION

1. Progressive has developed an established unfair business practice to underpay its customers' motor vehicle total loss claims. Progressive's uniform insurance contracts require payment of the Actual Cash Value ("ACV") of a total loss motor vehicle. However, utilizing a specialized customizable software program purchased from Mitchell International Inc., ("Mitchell"), called the Work Center Total Loss program ("WCTL"), Progressive instead applies a blanket deduction to all of its customers' vehicle total loss claims it calls a "projected sold adjustment" ("PSA" deduction) to reduce the amount it has

to pay. The deduction is based on bogus data that Progressive does not disclose to the insurance customer.

2. As the Mitchell WCTL software is customizable, the unfair application of the PSA deduction is optional. Progressive chose to engage in the practice of applying the PSA deduction nationwide, including Mississippi, in or around 2010.

3. The ACV of a vehicle is universally understood as the value of a vehicle before the accident causing the total loss. Industry standards require the use of comparable vehicles listed for sale in the local market (the "comparable vehicle method") or the use of recognized published regional values from recognized industry groups like the National Auto Dealers Association Pricing Guidebook ("NADA") or Kelley Blue Book ("KBB").

4. While Progressive uses the comparable vehicle method to value total loss claims, it adds a self-serving blanket PSA deduction to each of the comparable vehicles before arriving at a base value. This serves to conceal the PSA deduction from the front page of the Vehicle Valuation Report Progressive provides to total loss claimants. [1]

5. The PSA deduction is calculated by the software licensed to Progressive by Mitchell, and the data used is a highly guarded secret not provided to the claimant.

6. Progressive applies a PSA deduction to each comparable vehicle in the valuation report, based on statistically invalid data not documented in the report and includes data from vehicles that are not even the same make, model or year as the loss

[1] Ex. A pp. 1, 7-10.

vehicle and which are not even located in the same market area as the loss vehicle.[2] None of this is disclosed to the claimant.

7. Progressive's justification for the PSA deduction is that the company assumes "consumers typically negotiate a purchase price less than the list price."[3] However, in reality, the PSA deduction is based on an artificial, downwardly skewed, and deflated market of Progressive's own invention upon which to base its PSA deduction. The PSA deduction is not only speculative, it is unprecedented and unrecognized in the auto industry. The PSA deduction always results in a self-serving, bogus reduction[4] of the value it pays total loss claimants.

8. The purpose of Progressive's systematic across-the-board use of the PSA deduction is clear; the financial benefit of the company's business practice of keeping a portion of the funds it should be paying total loss claimants is staggering.[5]

9. Plaintiff, Debra Madison, is insured under an automobile policy underwritten by the Defendant, Progressive Gulf Insurance Company. She made a vehicle total loss claim, which, as part of Progressive's standard corporate procedure, was managed and adjusted by the Defendant, Progressive Casualty Insurance Company. When the Plaintiff

---

[2] Ex. A pp. 7-10.

[3] Ex. A p. 12.

[4] The average reduction is 3% to 9% of the value, with the greatest impact on vehicles with base valuations of $5,000 or less.

[5] Progressive recently agreed to pay $43,000,000.00 to 161,960 Georgia class members, which represents only 49% of the total amount of "what they would have received if the PSA had not been applied." *Brown v. Progressive Mountain Ins. Co.*, No. 3:21-cv-00175-TCB, (N.D. Ga. Feb. 14, 2025), Dkt. 245.

made a total loss claim, she received payment for her claim based on a report generated by Progressive's WCTL program, which applied the projected sold deduction.[6]

10. The amount of Progressive's projected sold deduction can be precisely calculated by adding each of the PSA's applied and dividing by the number of PSA's applied. The total PSA deduction applied to Debra Madison's total loss claim was $747.75.[7]

11. Plaintiff, Debra Madison, files this class action on behalf of herself and all other similarly situated Mississippi residents, requesting this Court enter a judgment requiring Progressive to pay her and all other Mississippi total loss claimants the amount Progressive kept for the PSA deduction, among other claimed damages.

12. The Plaintiff asserts claims for Breach of the Insurance Contract, Breach of Covenant of Good Faith and Fair Dealing, and Unjust Enrichment on behalf of herself and the putative class.

**PARTIES**

13. Plaintiff, Debra Madison, is a citizen and resident of Kemper County, Mississippi and at all relevant times herein was insured under a policy of insurance issued by the Defendant, Progressive Gulf Insurance Company.

14. Defendant, Progressive Casualty Insurance Company, is a foreign corporation doing business in the State of Mississippi and licensed with the Mississippi Department of Insurance. Defendant, Progressive Casualty Insurance Company, is

---

[6] Ex. A pp. 7-10.
[7] *Id*.

domiciled in Ohio with its principal office located at 6300 Wilson Mills Road, W33, Mayfield Village, Ohio 44143.

15. Defendant, Progressive Gulf Insurance Company, is a foreign corporation doing business in the State of Mississippi and licensed with the Mississippi Department of Insurance with its administrative office located at 6300 Wilson Mills Road, W33, Mayfield Village, Ohio 44143.

## JURISDICTION AND VENUE

16. This Court has personal jurisdiction over Defendants because the Defendants market and provide insurance products as well as adjust claims throughout the State of Mississippi and make their insurance services available to residents of Mississippi. Further, this Court has personal jurisdiction over Defendants as the Defendants' wrongful conduct against Plaintiff and proposed Class Members occurred in a substantial part in this District and because Defendants committed the same wrongful acts to other individuals within this judicial district, such that some of Defendants' acts have occurred within this District, subjecting Defendants to jurisdiction here.

17. This Court has jurisdiction over the subject matter of this class action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act ("CAFA"), because at least one member of the putative class, including the Plaintiff, is a citizen of Mississippi and Defendants are citizens of Ohio, thus meeting CAFA's minimal diversity requirement. Additionally, the proposed Class consists of 100 or more members and the amount in controversy, when aggregated among a proposed class of thousands, exceeds $5,000,000.00, exclusive of costs and interest and fees that might be awarded.

Additionally, the Court has supplemental jurisdiction over the Plaintiff's individual claims pursuant to 28 U.S.C. § 1367 (a) as the claims are part of the same case and controversy as the claims over which this Court has original jurisdiction.

18. Venue in this case is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the Defendants are deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events giving rise to the claim occurred in this District, and because Plaintiff was injured in this District.

## FACTUAL ALLEGATIONS

19. Progressive is the second largest combined personal and commercial auto insurance company in the United States with over 37 million customers.

20. Its claims processes and procedures for all auto total loss claims (personal and commercial) with any of its underwriters are controlled by Defendant, Progressive Casualty Insurance Company, which operates the central automobile claims center and claims website. Defendant, Progressive Casualty Insurance Company, developed the methodologies and procedures to adjust total loss claims, developed and operated the total loss claims process, contracted with Mitchell to use the WCTL software, and has copyrighted its total loss claims website. The Defendant, Progressive Casualty Insurance Company's, employees manage and direct the entire claims process and the implementation of PSA deduction scheme. The processes and procedures are used uniformly to adjust total loss claims across its affiliate companies, including Defendant, Progressive Gulf Insurance Company, and other Progressive companies operating in the State of Mississippi.

21. In 2010, Progressive announced it had selected Mitchell to be its key software vendor for processing auto damage claims and producing total loss vehicle valuations using the Mitchell WCTL.

22. In 2014, Mitchell entered into a contract (known as the "PD Suite Agreement") with Defendant, Progressive Casualty Insurance Company, to allow the Defendant, Progressive Casualty Insurance Company, to utilize the WCTL software to adjust total loss claims for its insureds across all of its companies and affiliates. This contract was later replaced on January 1, 2020, with a new "Master Software and Services Agreement" intended to continue this relationship and allow the Defendant, Progressive Casualty Insurance Company, to utilize the licensed software products of Mitchell to adjust the vehicle total loss claims of all Progressive insureds, including those in the State of Mississippi. Per the software agreements with Mitchell, Progressive Casualty Insurance retained control of its copyrights and claims procedures developed by Progressive.

23. Mitchell advertises their Work Center solution as a software system that allows a company to configure the modules and integrations specific to its own business needs. On their website, Mitchell states that "no two businesses work the same way, with WorkCenter, you can configure and manage your software based on your business needs," and it further allows a company, such as Progressive, to select certain software features to use that fit into their claims management plan. Progressive customized the software to include the PSA deduction in order to underpay its customers' vehicle total loss claims and profit from this unfair business practice.

24. As the claim handling entity of all Progressive affiliates, Progressive Casualty Insurance Company makes all the decisions as to which features to utilize in the software program to adjust claims and has made the decision to use this PSA deduction uniformly in the WCTL valuations used in all of its claims for all of its companies.

25. Upon information and belief, all Progressive insurance companies underwriting insurance policies in the State of Mississippi, including Defendant, Progressive Gulf Insurance Company, have their total loss motor vehicle claims handled through the central claims process owned, controlled, and managed by Defendant, Progressive Casualty Insurance Company, and all utilize the Mitchell WCTL valuation methodology which applies the common unfair scheme and claims handling practice.

26. Progressive's uniform insurance policies with the Plaintiff and the putative class members require payment of the "Actual Cash Value" of the motor vehicle, but actual cash value is not a defined term in Progressive's automobile insurance policies.

27. Progressive uses the comparable vehicle method to value total loss claims. However, using the WCTL software, Progressive adds a self-serving PSA deduction to each of the comparable vehicles before arriving at a base value. A single line item stated as a "Projected Sold Adjustment" that states an amount to be adjusted is entered as a deduction on one or more of the listed comparable vehicles listed on the latter pages of the Vehicle Valuation Report, but not on the front page of the Report where the "Base Value" and deductions for milage, condition, prior damage and upgrades are listed for the claimant's total loss vehicle. *See e.g.*, Vehicle Valuation Report Progressive provided to Plaintiff, Debra Madison, Exhibit A pp. 1, 7-10.

28. This serves to conceal the PSA deduction from the front page of the Vehicle Valuation Report Progressive provides to total loss claimants.

29. The PSA deduction is calculated by the software licensed to Progressive by Mitchell, and the data used is a highly guarded secret not provided to the claimant.

30. The deduction is calculated by using list sold data of other vehicles concealed from claimants that are not the same model, year, or even in the same market area as the loss vehicle.[8] As a result, Progressive has effectively created an artificial, downwardly skewed, and deflated market of its own invention upon which to base its PSA deduction. None of this is disclosed to the claimant.

31. Instead, on the last page of the Vehicle Valuation Report, Progressive says it applies the deduction because "consumers typically negotiate a purchase price less than the list price."[9] Progressive does not inform the claimant that the data used to calculate the deduction is not based on vehicles comparable to the claimant's total loss vehicle at all, but rather on unsuitable and statistically false data maintained within the Work Center Total Loss software program purchased from Mitchell, which is kept secret and never provided to the claimant.

32. Adding to the unfairness of Progressive's unfair and deceptive PSA deduction scheme, Progressive sends the Mitchell valuation reports to the insured, does not provide sufficient information to the insured to understand the illegal deduction and under the standard terms of their uniform auto policies, gives the insured only 72 hours with a

---

[8] Ex. A pp. 7-10.
[9] Ex. A p. 12.

rental car, necessitating a rush for the insured to find a replacement vehicle or be left with no transportation.

33. Progressive is legally and contractually required to accurately evaluate the ACV of a totaled motor vehicle in compliance with its insurance contract and industry standards. However, for the Plaintiff and Class Members (each of which can be identified by review of the actual reports and electronic data maintained by Progressive), the Vehicle Valuation Report used by Progressive to establish ACV instead applies an unprecedented, unsupported, impermissible and unverifiable PSA deduction.

34. The process by which Progressive applies the PSA deduction is designed to underpay total loss claims while concealing the scheme by excluding the vehicles and data used to create the PSA from the valuation report. The clear intent is to conceal the scheme and further prevent inquiry or discovery of the scheme by creating pressure on an insured who only has 72 hours to find another vehicle before Progressive stops paying for a rental car.

35. Defendant, Progressive Casualty Insurance Company, manages, operates and processes all claims for Progressive insureds in the State of Mississippi using the Mitchell WCTL valuation reports, including the auto total loss claims of the Defendant Progressive Gulf Insurance Company, Progressive American Insurance Company, Progressive Casualty Insurance Company, Progressive Classic Insurance Company, Progressive Direct Insurance Company, Progressive Max Insurance Company, Progressive Advanced Insurance Company, Progressive Northern Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Southeastern

Insurance Company, Progressive Specialty Insurance Company and Mountain Laural Insurance Company.

36. None of the Progressive companies operating and underwriting auto policies in the State of Mississippi, including the Defendant, Progressive Gulf Insurance Company, operates or maintains an independent website, and there is only one "Progressive" website for auto damage/loss claims.[10] The website is controlled and operated by Defendant, Progressive Casualty Insurance Company and Progressive Casualty Insurance Company owns the copyright. The website does not differentiate claims made by individual or commercial customers.

37. None of the Progressive subsidiaries operating in the State of Mississippi, including the Defendant, Progressive Gulf Insurance Company, operates or maintains an independent claims process or adjusts its own claims independently.

38. There is only one "Progressive" claims procedure and only one claims process for all vehicle damage/loss claims and the process and procedure uses the WCTL program. The Progressive claims process and procedure are operated by Defendant, Progressive Casualty Insurance Company.

39. Accordingly, given the facts stated above, the corporate structure of Progressive is such that under Mississippi law, Progressive underwriting affiliates/subsidiaries operating in the State of Mississippi, underwriting automobile policies, are mere instrumentalities of Progressive Casualty Insurance Company.

[10] https://www.progressive.com/claims/auto-process/

Progressive Casualty and all its underwriting affiliates/subsidiaries, including Defendant, Progressive Gulf Insurance Company, operate under one umbrella, conducting business as "Progressive Group of Insurance Companies" or simply "Progressive."[11]

40. All Progressive companies and affiliates operating in the State of Mississippi, underwriting automobile policies and adjusting vehicle total loss claims, including the Defendant, Progressive Gulf Insurance Company, have their vehicle total loss claims administered using the Mitchell WCTL program valuation method as controlled by the uniform claims processes of Defendant, Progressive Casualty Insurance Company.

## PLAINTIFF'S TOTAL LOSS CLAIM

41. On November 30, 2024, Plaintiff, Debra Madison, was involved in an automobile accident while driving her 2023 Kia Sorento, insured by Progressive Gulf Insurance Company. She reported the accident to Progressive on December 2, 2024. Thereafter, Progressive Casualty adjusted the claim and determined the accident caused a total loss of the Plaintiff, Debra Madison's 2023 Kia Sorento.

42. Pursuant to its business practice, on or about December 10, 2024, Progressive sent Plaintiff, Debra Madison a Vehicle Valuation Report prepared by Progressive Casualty, using the Mitchell WCTL program and including the PSA deduction.[12]

---

[11] Although Plaintiff, Debra Madison's Progressive auto insurance policy was underwritten by Progressive Gulf Insurance Company, the Vehicle Valuation Report attached here as Exhibit A as well as the Total Loss Settlement Summary attached here as Exhibit B were sent to her by Progressive Casualty Insurance Company bearing the name "Progressive Group of Insurance Companies."

[12] Ex. A pp. 1, 7-10.

43. Applying the PSA deduction to the 2023 Kia Sorento, Progressive applied the PSA deduction to eight (8) of the comparable vehicles used to arrive at the amount the company represented was the ACV. As a result, Progressive wrongfully deducted $747.75 from Debra Madison's total loss claim.

44. As a result of applying the PSA deduction to Debra Madison's total loss claim, Progressive has failed to pay the ACV of her 2023 Kia Sorento.

45. As a result of applying the PSA deduction to Debra Madison's total loss claim, Progressive has breach its insurance contract with Debra Madison, breached its duty of good faith and fair dealing with Debra Madison, and has been unjustly enriched in the amount of $747.75, the amount it kept for the PSA deduction.

## CLASS ACTION ALLEGATIONS

46. The causes of action contained herein are brought as a class action under the Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(3) as more specifically set forth below. Progressive's conduct has been systemic and continuous and has affected a large number of Progressive policyholders in the State of Mississippi insured by the Defendant, Progressive Gulf Insurance Company, and all other Progressive companies operating in the State of Mississippi.

47. This action seeks to recover damages suffered by the Plaintiff, and the members of the proposed class (collectively "class members"), all insureds of Progressive, who had their claims processed by the Defendant, Progressive Casualty Insurance Company, while residents of the State of Mississippi under a common policy directive from the Defendant, Progressive Casualty Insurance Company, and their uniform claims

handling practices within all of their Progressive companies with respect to paying total loss claims to its own insureds under Progressive's personal and commercial first party auto physical damage coverages (Collision, Comprehensive, and Uninsured/Underinsured Motorist Coverage ("UM/UIM")) (collectively, "first party APD coverage").

48. All proposed class members have fully complied with all pertinent policy provisions to receive payment under their policies with Progressive, and Progressive determined that coverage existed for the loss and determined the claim to be a total loss. No further performance is required by any proposed class member to secure all available benefits provided by Progressive's policy.

Class Certification Definition

49. Plaintiff seeks certification of the following Class:

> All Progressive insureds of any Mississippi Progressive Company underwriting policies in Mississippi with first-party auto policies issued in the State of Mississippi, who had a claim paid for the total loss of their vehicles under their first party (comprehensive, collision, and UM/UIM) coverages based on a total loss valuation generated by Defendant, Progressive Casualty Insurance Company's WCTL program which deducted an amount based on a "Projected Sold Adjustment."

50. Excluded from the Class are (a) the assigned Judge, the Judge's staff and family, and Progressive employees, (b) claims where the total loss was on a "non-owned" vehicle, where no insured has any ownership interest or rights in the vehicle, (c) claims where the insured submitted written evidence supporting a different valuation and the amount of that different valuation submitted by the insured was paid by Progressive to settle the total loss, (d) claims where the insured executed a settlement agreement for a value agreed on between the insured and Progressive, and (e) claims of any insured who is

already covered as a class member for any Mississippi Progressive underwriter in any other litigation where a class has already been certified for that specific Progressive underwriter.

Numerosity

51. Pursuant to Rule 23(a)(1), membership in the class is so numerous as to make it impractical to bring all Class Members before the Court. The exact number of Class Members is unknown but can be determined from the records maintained by the Defendants (including those readily obtainable by Progressive and from its vendor and agent, Mitchell), which allow the members of the proposed Class, as well as those who are then excluded, to be identified with precision.

Typicality

52. Plaintiff, Debra Madison, is typical of a member of the Class pursuant to Rule 23(a)(3). Plaintiff purchased a Progressive automobile policy, paid premiums, and made a claim for loss when her insured automobile was damaged. She filed a claim with Progressive and made her vehicle available for determination and payment of her loss. Progressive then elected to declare the vehicle a total loss, but underpaid the loss based upon a valuation Progressive generated using the deceptive WCTL program which used criteria to underpay the loss, which was not permitted under Progressive's contractual obligations and Mississippi law. Plaintiff's interest in obtaining compensation for her loss (the underpayment of her claim compared to the amount she would have received, but for, the unfair PSA deduction) are identical to those of other unnamed members of the Class.

Commonality

53. Pursuant to Rule 23(a)(2) there are questions of law and fact common to all members of the proposed Class which predominate over any individual issues. Common questions of law and fact include the following:

a. Whether Actual Cash Value is a defined term in the automobile policies issued to the Plaintiff and class members?

b. Whether the term Actual Cash Value indicated in Progressive's insurance policies issued to the Plaintiff and the class members should be interpreted against Progressive under Mississippi law.

c. Whether Progressive's use of the PSA deduction is in line with auto industry standards in appraising total loss vehicles.

d. Whether Progressive's use of a "projected sold adjustment" deduction is contractual or insurance bad faith under Mississippi law?

e. Whether the use of a PSA is legal under Mississippi law?

f. Whether the use of a PSA is an unfair business practice?

g. Whether Progressive's PSA deduction is based on reasonable criteria to value a vehicle and/or based on real, verifiable data?

h. Whether Progressive's PSA deduction is based on manipulated, self-serving data?

i. Whether Progressive determines ACV not by market value, but by an artificial, downwardly skewed, and deflated market of its own invention?

j. Whether by use of the PSA deduction, is Progressive in possession of money which belongs to the Plaintiff class members and which Progressive, in good conscience and justice, should pay to the Plaintiff and class members?

k. The amount of the PSA deduction that Progressive applied to each of the class members' total loss claims?

Adequacy Of Representation

54. Plaintiff has no interest adverse to the interests of other members of the proposed Class and will fairly and adequately protect the interests of the Class pursuant to Rule 23(a)(4).

55. Plaintiff has retained the undersigned counsel, who are experienced and competent in the prosecution of class actions and complex litigation and have the extensive experience necessary to prosecute this case and adequate resources to prosecute this claim.

Superiority

56. Pursuant to Rule 23(b)(3), the questions of law and fact common to the proposed class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Absent a class action, Progressive's use of a computerized source that improperly underpays the actual cash value loss to its insureds will continue, and the class members will continue to suffer damage, and Progressive's conduct will proceed without effective remedy.

57. Individual class members of the proposed class have little interest or ability to prosecute an individual action due to the relatively small damages suffered by each member of the proposed class.

58. This action will allow for the orderly, fair, and expeditious administration of class claims, economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured. A collective adjudication will allow sufficient proof and expertise to be assembled to fairly value and prove the losses at issue.

59. This action will present no difficulties which would impede its management by this Court as a class action and a class action is the best available means by which Plaintiff and the members of the proposed class can seek redress for the harm caused to them by Progressive. An exact list of members of the proposed Class can be generated from Progressive and its vendor's records. Progressive's records will show the amounts its insureds were underpaid for their total loss claims where the amounts paid were reduced for "projected sold adjustment". As such, both liability and damages can be shown on a class-wide basis with common evidence and then allow a recovery to be distributed to the members of the class.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Progressive Casualty and Progressive Gulf)**

60. Plaintiff and the proposed class members assert Progressive Casualty and Progressive Gulf have breached the insurance contract and incorporate all preceding paragraphs as if fully set forth herein.

61. Plaintiff entered into a contract for automobile insurance with Defendant, Progressive Gulf Insurance Company. However, Progressive Gulf operates as a mere instrumentality, an affiliate/subsidiary of Progressive Casualty under the name "Progressive Group of Insurance Companies" or simply "Progressive." Therefore, a contract of insurance existed between Debra Madison and Progressive Gulf/Progressive Casualty, "Progressive," at the time she suffered a total loss of her vehicle on November 30, 2024. She paid all required consideration in the form of premiums for the coverage afforded by the insuring agreement.

62. The Progressive policy, at all relevant times herein, provided insurance coverage to Plaintiff for physical damage and the total loss of her motor vehicle and provided for the payment of the "actual cash value" of her vehicle in the event of a total loss.

63. The insurance contract also contained an implied covenant of good faith and fair dealing requiring that neither party to the agreement would do anything to injure the right of the other to receive the benefits of the agreement, and each party agreed to act in good faith in performing the contract.

64. Progressive breached the contract when, rather than valuing Debra Madison's 2023 Kia Sorento, using a methodology in line with industry practice, the company applied its PSA deduction to intentionally low-ball the Plaintiff using secret, artificial, downwardly skewed, and deflated market data of its own invention.

65. As a direct and proximate result of this breach of contract, the application of the PSA deduction, Progressive paid Debra Madison $747.75 less than what she would have received if the PSA had not been applied.

66. Plaintiff, Debra Madison, has suffered damages in the amount of $747.75 as a direct and proximate result of Progressive's uniform intentional unfair business practice of applying its PSA deduction to her total loss claim.

**SECOND CAUSE OF ACTION**
**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**
**(Progressive Casualty and Progressive Gulf)**

67. Plaintiff and proposed class members assert Progressive Casualty and Progressive Gulf have breached their duty of good faith and fair dealing and incorporate all preceding paragraphs as if fully set forth herein.

68. The Plaintiff entered a contract for automobile insurance with Defendant, Progressive Gulf Insurance Company. However, Progressive Gulf operates as a mere instrumentality, an affiliate/subsidiary of Progressive Casualty under the name "Progressive Group of Insurance Companies" or simply "Progressive" and therefore, a contract of insurance existed between Debra Madison and Progressive Gulf/Progressive Casualty, "Progressive," at the time she suffered a total loss of her vehicle on November 30, 2024. She paid all required consideration in the form of premiums for the coverage afforded by the insuring agreement.

69. The Progressive policy, at all relevant times herein, provided insurance coverage to Plaintiff for physical damage and the total loss of her motor vehicle and

provided for the payment of the "actual cash value" of her vehicle in the event of a total loss.

70. Under Mississippi law, the insurance contract between the Plaintiff and Defendants and between the class members and Defendants contained an implied covenant of good faith and fair dealing requiring that neither party to the agreement would do anything to injure the right of the other to receive the benefits of the agreement, and each party agreed to act in good faith in performing the insurance contract.

71. Progressive breached its duty of good faith and fair dealing when, rather than valuing Debra Madison's 2023 Kia Sorento, using a methodology in line with industry practice, the company applied its PSA deduction to intentionally low-ball the Plaintiff using secret, artificial, downwardly skewed, and deflated market data of its own invention.

72. As a direct and proximate result of this breach of duty of good faith and fair dealing, after applying the PSA deduction, Progressive paid Debra Madison $747.75 less than what she would have received if the PSA had not been applied.

73. Plaintiff, Debra Madison, has suffered damages in the amount of $747.75 as a direct and proximate result of Progressive's uniform intentional breach of duty of good faith and fair dealing in applying its PSA deduction to her total loss claim. The putative class members likewise suffered damages as a result of Progressive's uniform intentional breach of duty of good faith and fair dealing in applying its PSA deduction to their total loss claim.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT *in the alternative*
## (Progressive Casualty)

74. Plaintiff and proposed class members assert Progressive Casualty Insurance Company has been unjustly enriched by virtue of retaining the amount of the PSA deduction and incorporate all preceding paragraphs as if fully set forth herein.

75. If this Court determines that neither the Plaintiff nor the proposed class members have contractual privity with Progressive Casualty Insurance Company, in the alternative, the Plaintiff and proposed class members assert that Progressive Casualty Insurance Company has been unjustly enriched by virtue of keeping the amount of the PSA deduction.

76. Under the circumstances described in this Class Action Complaint, Progressive has been unjustly enriched and should not, in good conscience and justice, retain the funds and should deliver the funds to the Plaintiff and class members.

**WHEREFORE**, Plaintiff and the proposed Class Members respectfully pray that the Court:

1. Enter an Order certifying this action as a class action as to each cause of action stated herein, including certifying the cause of action under the appropriate subsection of Fed.R.Civ.P.23;

2. Enter an Order appointing Plaintiff, Debra Madison, as class representative and appointing the undersigned counsel to represent the class;

3. Enter judgment in favor of Plaintiff and class members for compensatory damages resulting from the Defendants' breach of contract in the amount of underpayment

to Plaintiff as measured by the amount by which the total loss payments were reduced by the taking of the PSA deduction;

4. Enter judgment in favor of Plaintiff for compensatory damages resulting from the Defendants' breach of duty of good faith and fair dealing in the amount of underpayment to Plaintiff as measured by the amount by which the total loss payments were reduced by the taking of the PSA deduction;

5. Enter judgment in favor of Plaintiff and the class members against Defendant, Progressive Casualty Insurance Company, for unjust enrichment as measured by the amount by which the total loss payments were reduced by the taking of the PSA deduction;

6. Award Interest on any Judgement rendered;

7. Award Attorneys' fees and costs of suit, including costs of notice, administration, and expert witness fees; and

8. Award such other legal or equitable relief, including injunctive and/or declaratory relief, as the Court may deem appropriate.

9. Grant the Plaintiff and class members a jury trial.

July 3, 2025

/s/ Caroline Crawley Commer

Caroline Crawley Commer, MS Bar No.: 10722
**Law Offices of Caroline Crawley Commer**
16323 Main Street
Louisville, MS 39339
Phone: (662) 773-5093

Fax: (662) 773-8262
boomoore22@yahoo.com

*/s/ Jay Aughtman*

Joseph "Jay" H. Aughtman, *pro hac vice to be filed*
AL Bar No.: 8081-A43J
**Aughtman Law Firm, LLC**
1772 Platt Place
Montgomery, AL 36117
Phone: (334) 215-9873
Fax: (334) 213-5663
jay@aughtmanlaw.com

/s/ Aaron C. Hemmings

Aaron C. Hemmings, *pro hac vice to be filed*
NC Bar No.: 29810

/s/ Kelly A. Stevens

Kelly A. Stevens, *pro hac vice to be filed*
NC bar No.: 27066
**Hemmings & Stevens, P.L.L.C**
5540 McNeely Drive, Suite 202
Raleigh, NC 27612
Phone: (919) 277-0161
Fax: (919) 277-0162
ahemmings@hemmingsandstevens.com
kstevens@hemmingsandstevens.com

*Attorneys for the Plaintiff and Class*